Good morning. My name is Susan E. Hill and I represent the petitioner, Mr. Rolfredo Martinez. Mr. Martinez's case consists of two claims. One is for 212C relief or Section 8 USC 1182C. And the second claim is for relief under the Convention Against Torture. I'll address the 212C relief claim first. The 212C claim inherently is predicated in this case on two convictions that Mr. Martinez has on his record, both for aggravated felonies, and they were both entered into with plea agreements. The first conviction was entered into plea agreements. Are there plea agreements in the record? There are records. I know for sure the 1980 or 1991 is in the record. If you're asking for the actual plea agreement, Your Honor? Well, one question that arises in my mind is whether St. Cyr and Toya are limited to situations where there are actual plea agreements and there's been a bargaining process between the prosecution and the defendant, or whether it's just a straight-up, applies to a straight-up guilty plea as well. I can see the arguments both ways, but I'm wondering what situation we have here. Right. Well, here, Your Honor, we don't have, I don't recall having evidence of either plea agreement. However, with respect to your question, I acknowledge that Toya did go at length about the bargaining process. And St. Cyr. And St. Cyr and the reliance element. However, since promulgation or since publication of Toya, the Attorney General promulgated 8 CFR section 1212.3F4, which specifically addressed Toya. And the Attorney General also acknowledged Toya, and the reason that it was being promulgated was specifically in response to Toya. And the Attorney General, while it did acknowledge that Toya discussed reliance, the regulation itself did not make any reference and has no language about the element of reliance. And that regulation just specifically states any conviction that was obtained through plea agreement prior to enactment of the Immigration Act of 1990, or M Act, will not be counted against a person for that aggregate term of imprisonment amounting to five years. And I assume that the Court is aware of the requirements for 212C relief, and I'm sorry if I'm skipping that. Right. But it says plea agreement in the regulation. Yes. So it's limited to situations where there's plea agreement and not just a straight-up penalty plea? The regulation itself, I'm sorry. You're correct, Your Honor. It does say entry pursuant to a plea agreement. In a later case, it is Hernandez de — pardon me while I find the full name — Hernandez de Anderson v. Gonzales. The Court did again discuss the reliance element, but it did refer back to some other cases which acknowledge that certain situations inherently are going to be presumed that the person who has been subject to a conviction inherently relied upon the availability of certain relief from deportation relevant to this case. So it was not necessary to examine a plea agreement to look for reliance. It said that in certain situations, most criminal or all criminals who, excuse me, are considering plea agreements are acutely aware of the immigration consequences that they are facing as a result of their plea. Therefore, it is presumed that they knew and relied upon this, and it is sometimes dependent on a fact situation. I would argue here that in this situation, it is obvious, and according to Hernandez, that can be gleaned from the specific language of the immigration statute that is at issue. In this case, it's a 212c statute, and it is the 5-year aggregate term of imprisonment that is at issue for Mr. Martinez. If he — and I would argue that because the statute had a limitation on 5-year aggregate, it would have relied upon the existence of that language in the immigration statute or not. In Mr. Martinez's case, at the time that he pled to either offense, but mainly the second offense, the second offense, he eventually served four and a half years for that, which put him over the limit for the — in conjunction with his first offense, put him over that 5-year limit. The language of the 212c statute at that time was not clear that it applied to aggregate sentences. The language at the time, this was in between the two amendments. The first amendment to 212c relief took place in 1990 with the Immigration Act, and that is when it first added the 5-year limitation. Then Mr. Martinez pled guilty to his second offense, and I argue that the language at that time simply said that if a person has been convicted of an aggravated felony, and it uses specifically the word an, indicating a single offense, and has served 5 years, the person is not eligible, that language does not clearly indicate that aggregate sentences can be applied. We're down to 4 minutes, and the government's only issue in the brief is jurisdiction. That's their entire argument at this stage of the proceedings. Don't you think you want to spend some of your time on jurisdiction? Yes, Your Honor. I addressed it in the brief. However, I assert that this Court does have jurisdiction, because this is a question of impermissible retroactivity, and that has been recognized in the Saravia case, which I also cited in the brief, as a due process constitutional issue, which this was not raised before the BIA. The issue was raised in front of the immigration judge as well, and the judge did have opportunity to address that, but it was not in front of the judge. And I do acknowledge it was not addressed in front of the BIA, but according to the Saravia case, that is not necessary for these purposes. Returning to the language of the statutes, as I stated, when Mr. Martinez pled guilty to his second offense, the language did not clearly indicate that his sentences could be aggregated. Therefore, it should be presumed that he, when he pled, relied on the fact that this statute only applied to one-time or individual convictions, resulting from that individual conviction in a five-year term of imprisonment. Therefore, when he pled, it can be presumed, according to the Hernandez v. Anderson case, that he inherently relied on the fact that this single conviction would not have endangered him. Excuse me. If there are some further factual issues that this Court would like to be cleared of, especially in reference to the plea agreement and the reliance element, then I would argue that the matter would need to be remanded to the lower courts. You have two minutes. Do you want to save that for rebuttal? Yes, I will, Your Honor. Thank you. Good morning. May it please the Court, Jamie Dowd on behalf of the Respondent Attorney General. I would like to emphasize the jurisdictional question here, because I think it's the most important one the Court should consider. Well, have you waived all the other arguments? Has the government waived everything other than jurisdiction? Well, we did brief the CAT claim, so we did brief the merits of that. But with regard to the 212C claim, we did only brief the exhaustion issue. So if we disagree with you on the exhaustion question, we have to roll for Petitioner, because you've waived all those arguments. Well, then the case should go back to the Board for a determination, because the Board never got to address the question of the Petitioner's eligibility for Section 212C relief in any respect. As a matter of fact, in the – It was before the Board, and the Board affirmed the IJ based on Bravano. Right, but in the Petitioner's brief to the Board, he specifically stated that he would only be addressing his CAT claim. Right, but the IJ addressed the 212C claim. The IJ did address the 212C claim. And then the BIA just affirmed it. Are you saying it didn't think about what it was affirming? Well, it affirmed to the extent that the – to the extent that the Petitioner was making arguments to the Board, which were only the CAT arguments. But what does Bravano mean? Doesn't it adopt everything that the IJ did? Adopt and affirm, but to the extent that the Petitioner is making a challenge to the Board. Where does it say that in Bravano? It doesn't specifically say that. However, there's no way for the Board to know that an issue is being addressed unless the Petitioner specifically states that they're challenging that issue. And in this case, the Petitioner affirmatively stated that he would only be addressing the CAT claim in his brief. Nowhere in his Notice of Appeal, nor his brief to the Board, did he at any time raise a 212C claim. Is that a different counsel than we have here? It's a different counsel with the same firm. To my knowledge, they're within the same law firm. Okay, but you would agree that if your argument on jurisdiction fails, we should remand to the BIA. For the Board to consider the 212C claim, considering that it's never had a chance to look at it before. Well, it had a chance. I mean, the IJ's actions decision was before it, and they said we affirm it. So you may say it didn't have a fair chance, if you think it wasn't fair. But it certainly had the chance when it applied Bravano to the entire opinion of the IJ. But, Your Honor, this Court has stated that the Board need only look at issues actually raised in the Petitioner's brief and need not address extraneous issues that the Petitioner is not challenging. And as I said, in this case, the Petitioner affirmatively stated to the Board that he would only be addressing his CAT claim. Therefore, the Board had no reason to believe that the Petitioner was challenging. Well, that's what I said. You may say it's not a fair chance, but it certainly had a chance. It looked at the IJ opinion, and it said under Bravano, we affirm. It could have said we affirm only as to the torture claim because the other issues are not challenged. Well, the Board's decision, Your Honor, actually does state, it adopts and affirms, it cites Bravano, and then in the next sentence states, before this Court or before the Board, the Petitioner challenges the immigration judge's denial of his CAT claim and makes several other statements regarding that. Well, actually, your position is you didn't have jurisdiction to consider the retroactivity claim, whether that, the legal issue of whether the retroactivity, I'm not talking about the merits of the 212C, but you didn't have the jurisdiction to challenge whether the legal issue there. You mean the Petitioner? Well, there's a brief statement in the Petitioner's opening brief that the Board would not have jurisdiction to assess that. That's the Petitioner. He couldn't have challenged the legal issue, the retroactivity issue. And she does make that claim, Your Honor, however... Which you don't respond to? Well, exhaustion is a jurisdictional requirement, and so the issue would have to have been raised. The Board could have fixed an error, had there been one, in the immigration judge's decision, with regard to whether or not the Petitioner was eligible. However, it did not, and did not address whether or not the immigration judge's decision was an error because the decision wasn't raised to the Board on appeal. Notwithstanding the arguments made whether or not the Board would have had jurisdiction, it should have been provided the opportunity to address the eligibility, and could have corrected an error, had there been one, particularly considering this Court possibly has case law that is in conflict with the immigration judge's decision. That is something that the Board could have corrected. So the Supreme Court has case law that's contrary to the Board's decision in St. Cyr? Well, the Board did... This case has been remanded by the Board with regard to St. Cyr for the previously... Previously, right. Right, for the consideration of the 212C application because of St. Cyr. And arguably, Guy J. got it wrong. Under TOIA, it appears, at first blush, that the immigration judge's decision is in some conflict, at least with TOIA and this Court's analysis. What about INS's own regulations? It appears that the decision could have some errors. However, those errors could have been corrected by the Board had the issue been raised. And it was not... And to the extent that the petitioner seeks to make some arguments with regard to changes in the law, and that could have been raising the motion to reopen, which the petitioner has also failed to file. So it appears that at no point has the petitioner made any moves to get this question before the Board on 212C. And whether that was... Are you talking about the legal question? I'm sorry? The legal question? Any question regarding 212C. The retroactivity question? Any question regarding 212C. I'm just wondering, though, whether the retroactivity issue is something that we necessarily... The legal question would defer to the Board because I don't see that the Board has any special expertise in considering questions of retroactivity and due process. Well, that's possible, Your Honor. However, it's also possible that the Board could, in making an analysis on the 212C, on whether this particular petitioner is eligible, could find an error that the Board could correct, notwithstanding the retroactivity or any due process arguments, but that the Board could, if it were given the opportunity to look at whether or not the petitioner is eligible, could correct any errors that were made to the extent that either finding the immigration judge's decision was just wrong... Well, there's an argument that takes into account both of your positions, which is that if the petitioner's not required to exhaust that type of issue because it's the kind of constitutional issue the Board can't resolve, it's also possible that it could be remanded to the Board for adopting its position, whatever it might be. And if it's one that was in conflict, it would be ignored. But what their argument basically is that they didn't have to raise it. You don't have to exhaust this type of issue, which I must say I don't think is answered in your brief. But even if they didn't exhaust it and we had the jurisdiction to resolve it, we could still remand it to the Board so that the Board could adopt the proper position. True, Your Honor. The Court could remand on either the basis that it disagrees with the exhaustion or that the exhaustion's not required or that there was some sort of error. And this Court has stated in cases which the Board adopts and affirms that sometimes it's necessary for the case to go back to the Board for an expanded analysis of on which basis for the immigration judge's decision it would adopt and affirm, if there were several that could be chosen. However, the Court has stated that exhaustion is jurisdictional. So notwithstanding the arguments made, we don't know why the issue wasn't exhausted. And it could have been a tactical consideration on the Petitioner's part, whether or not they wanted to pursue 212c relief. We don't know why it wasn't exhausted. All we know is that there's an affirmative statement made by the Petitioner in your brief that they would only be addressing the Catt claim. Well, maybe they thought that it was not necessary to exhaust it because it was a type of issue the Board didn't have the authority to resolve, which is what they say in the brief, and I don't find any answer to that. Well, except that the statute, Section 242d, clearly states that an issue must be exhausted. Well, not if it's a due process or a constitutional question that the Board doesn't have the authority to resolve. Well, but as I stated, the Board would. That's their argument, and they cite a case for it. And what I'm saying is I don't think you addressed that argument in your brief. Well, and I don't know that I'm going to be able to completely calm, I guess, your concern with that. However, all I can say is that it's possible that because there is case law from this Court, that appears to be in conflict with the immigration judge's decision, the Board could have corrected an error had it been put on notice that the petitioner was challenging it. I'm not disagreeing with that. All I'm saying is you have, on the jurisdictional question, approximately a one-page argument. That's correct. In which you do not answer their argument that it was not necessary to exhaust in this type of a case. Well, it's the government's position that exhaustion... And whatever the position is, I'm talking about your brief. Just the way you are concerned that your opponents didn't exhaust something or didn't argue something. So the same concern exists with respect to your brief. Because although your opponents made that argument, that exhaustion is not required because it's a due process issue. There is no response to that argument. And if we're going to apply, you know, the failure to exhaust arguments to your opponents, they also apply to you. Well, I guess I'm a little bit confused only to the extent that our entire argument with regard to Section 212C is that the issue was not exhausted before the Board. And their argument is we're not required to exhaust and relying on cases, and you don't respond to that. Well, and our argument is that they are required relying on the statute, Section 242D. So that's my only response that I can give. You know, anyway, if it goes back and the constitutional issue we resolve, the final word is with the Board because the relief that sought was discretionary. The relief that sought is discretionary. And there's no analysis has been made with regard to the equities of the case. The immigration judge's finding was only on the statutory element in terms of the aggregate five years served. So it's possible the Board could make a decision on a discretionary basis or could send it back for an analysis of the equities here. But the only question that is standing now is the statutory eligibility. That's the only answer that the Attorney General has made with regard to that. Why don't I ask you another question? The judge said this was a very sympathetic case. The petitioner had turned life around. It appears that it's likely there would be a 10% chance of future persecution. Is this the kind of case the government would be willing to take to mediation considering the immigration judge's view of the merits? To take to mediation? If we have a fine mediation program, as you may be aware. Yes, I am aware. It's a very great, very wonderful program. Yeah. And I would think that your opponent would be willing to go through the mediation process. It doesn't compel you to reach any result, but you may. It sometimes gives the government an opportunity to do a little bit of justice, which must make your office feel good at the end of the day. Well, I know you're stuck with a lot of laws that don't give a lot of flexibility, and you have to pursue things that are clearly unjust cases with unjust results, because that's the law, that you make your best effort. But in a number of cases, it's been possible to resolve them and really reach a fair result through use of mediation. It seems to me, from what the immigration judge said, that this could be a case that would give you the opportunity to do a little bit of good with your life. You, the government. Right. Well, with regard to the cat claim, we wouldn't have any, I guess, leeway with regard to that, because the board has made a factual determination with regard to eligibility. Well, that's something in mediation you might resolve. You give them the asylum claim, they give you the cat claim, everyone goes home happy? Well, I would probably be the one who would be handling the mediation, and it's not within my purview, I guess, to be able to agree to such things. The Department of Justice always says that. They send people out here with extraordinarily limited authority. Why can't you say, on behalf of the Department of Justice, whether or not you'd be willing to mediate a case like this? You should get that authority before you come out here. Well, that authority has to come from a higher channel than mine. I realize that, but the higher channel sent you to talk to the Ninth Circuit. Correct. So it should resolve whether you have the authority, if a judge asks you to go to mediation, whether you would be willing. And that should be one of the questions that the government attorneys come out here prepared to answer. Well, I can't answer whether or not we would participate in a mediation. Yes, we would participate. However, what I cannot answer is on behalf of our client as to whether any relief could be afforded. Before you go to mediation, if you have the authority to say yes, then what we'll do is we'll have an order referring you to mediation. By that time, the higher authority will have returned from his Olympic duties, and you may be able to determine how much far you can go in mediation. You'll have time to do that. Correct, but I don't want to mislead the court, and I want to get on the record that there's no guarantee that the client would agree to any relief. We've had lots of cases that have gone to mediation, and then we get reports back. It's not possible, for one reason or another, to resolve it. But we get back some very good reports where everybody feels good at the end of the case. I'm serious about that. No, and I've had successful mediation. Okay, so why don't we send it to mediation. You talk to whatever higher authorities you need to talk to, and let's hope when you go to mediation, you'll have authority. I will do my best, Your Honor. Okay, thank you. Thank you. Well, we've given you kind of a hard time. That's okay. You've held up well. Well, not everybody that comes from the Department of Justice is as pleasant as you are. Oh, thank you. It is my job. I don't mind you giving me a hard time. And I would like to have, you know, the best resolution possible. Well, Ted Pergas is our expert at that. At what? At giving him a hard time and telling him about justice and fairness. Me? Thank you very much. Thank you. All is well. I assume you have no objection to going to mediation? We'll try anything. Thank you. I appreciate that. Your client is 70? Or how old is he? He is, I have to do the math. I was trying to figure it out. Close to that, I believe. Yes. He came here when he was 15. He came in 66. About 35 years ago. Yes. Okay, so he's not quite 70. And the immigration judge was very highly of him. Right. I can vouch he's a very nice man. Yeah. Well, we have a very nice mediator. We've got a very nice young lady from the Department of Justice. All these nice people. Surely something good will happen. Tell your client to behave himself. Thank you. If you have no other questions about the jurisdictional issues. Does he have children? I don't recall. I don't believe he does. But I know he's been ill lately with his complications. With what? I'm sorry, Your Honor? Say he's been ill? Yes, he's been hospitalized recently. With what? I'm not sure. I don't inquire. Unless they volunteer. Oh, okay. Yes. Thank you, Your Honor. Thank you. Okay. Thank you very much. Okay. We'll take the next matter. Keller v. Golden Corral. Franchising system. That's submitted. And then we come to Stetson v. West Publishing Corp. Thank you.
judges: Pregerson, Reinhardt, Wardlaw